IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable R. Brooke Jackson

Civil Action No. 12-cv-000455-RBJ

JOE ESTRADA,

    Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

    Defendant.

ORDER

This matter is before the Court on review of the Commissioner's decision denying plaintiff Joe L. Estrada's application for Disability Insurance Benefits pursuant to Title II of the Social Security Act. Jurisdiction is proper under 42 U.S.C. § 405(g). This dispute became ripe for decision by this Court on August 30, 2012 upon the filing of Mr. Estrada's reply brief.

**Facts**

Mr. Estrada is a forty-one year old man who filed for disability insurance benefits alleging an onset date of disability of July 7, 2008. Mr. Estrada claimed disability benefits because of several mental impairments and diabetes. The ALJ determined that Mr. Estrada suffered from the following severe impairments: generalized anxiety disorder, major depressive disorder, personality disorder, panic disorder, and schizoaffective disorder with psychotic features. R. 23. The ALJ determined that because Mr. Estrada did not testify to any symptoms or limitations related to his diabetes, the diabetes was not a severe impairment, but rather "no more than a slight abnormality that imposes no more than a minimal effect of his ability to

1

perform basic work activities." R. 24.  Because Mr. Estrada did not object to the ALJ's determination that his diabetes is not severe, this opinion will focus on Mr. Estrada's mental impairments.

<u>Mr. Estrada's Mental Health</u>

Mr. Estrada first complained of mental health issues in February 2007 when he went to Clinic Campesina and saw Dr. Joan Barber. R. 221.  At that time, Mr. Estrada complained of anxiety and was prescribed Paxil.  *Id.*  Mr. Estrada began seeing Dr. Snodgrass in the spring of 2008 and saw her through September 2009 at the Community Reach Center.  Mr. Estrada complained of depression, major mood swings, paranoid symptoms, and possible auditory hallucinations. R. 378.  Dr. Snodgrass diagnosed Mr. Estrada with a mood disorder, not otherwise specified, likely bipolar disorder and narcissistic personality disorder. R. 379.  In May 2008 Mr. Estrada reported to Dr. Snodgrass that he was more depressed and having more crying spells and more panic symptoms. R. 374.  At that time, Mr. Estrada also reported that he had not been taking his medication. R. 374.  In June 2008 Mr. Estrada reported that he felt like he was "going crazy," he felt irritable, and that he was going to break down and cry. R. 372.

In August 2008 Mr. Estrada was sleeping all the time, his mood had "ups and downs," and there was a lot of "drama" in his life. R. 368.  Mr. Estrada also said that he tried to go out looking for a job but panicked and went back home. R. 368.  In February 2009 Mr. Estrada reported that things were about the same. R. 362.  Dr. Snodgrass observed that Mr. Estrada was cooperative but his mood was "more low."  She found that although he still complained of hallucinations and paranoia, there was no evidence of a thought disorder during the appointment. R. 362.  She also opined that his insight and judgment were limited. R. 362.  In September 2009 Mr. Estrada asked Dr. Snodgrass to fill out questionnaires, presumably for disability benefits. R.

356. Dr. Snodgrass did not fill out these questionnaires, because she had not worked with Mr. Estrada in a while and felt that he would do best if he were working. R. 356. Dr. Snodgrass talked with him about supported employment. R. 356.

In December 2009 Mr. Estrada began seeing Dr. Paddack, also at the Community Reach Center. Dr. Paddack opined that Mr. Estrada suffered from schizoaffective disorder, depression with psychotic features, agoraphobia with possible panic, and nicotine addiction. R. 392. In February 2010 Dr. Paddack noted that Mr. Estrada was depressed but not suicidal, and that he suffered from paranoia. R. 387. Treatment records from Dr. Paddack continue through May 2010. There is nothing in the record from Dr. Paddack that opines as to Mr. Estrada's ability to work or what restrictions he might have.

The treatment notes from both Dr. Snodgrass and Dr. Paddack reference that Mr. Estrada was seeing a therapist at the Community Reach Center. However, no treatment notes or assessments from a therapist or counselor are included in the record.

In January 2009 Dr. Leidal completed a consultative evaluation and report on Mr. Estrada. Dr. Leidal opined that Mr. Estrada's most serious mental symptom is chronic daily depressed mood with occasional impairments in reality testing, and that his GAF is 50. R. 319. Dr. Leidal also completed an assessment of Mr. Estrada's work-related mental abilities. In his assessment, Dr. Leidal opined that Mr. Estrada's ability to relate to others in an appropriate manner, such as co-workers or supervisors, is moderately impaired; and his ability to accept and respond to instruction and criticism in a work setting is moderately to markedly impaired. R. 319. Dr. Leidal found that Mr. Estrada's adaptability is moderately to markedly impaired; his ability to work near others and remain focused is mildly impaired; his ability to maintain attention in simple work related tasks is not impaired, nor is his ability to sustain an ordinary

routine without supervision. R. 319-20. Mr. Estrada's ability to follow short, simple instructions is not impaired, but his ability to comprehend and carry out complex levels of instruction and direction is moderately impaired. R. 320. Persistence in completing routine daily tasks or work related tasks is likely moderately impaired. R. 320. Dr. Leidal concluded that Mr. Estrada's ability to obtain some kind of productive employment is not impaired, but his ability to maintain employment, adapt to the work environment, and tolerate the stressors of the work environment and a complete normal work-day is moderately to markedly impaired. R. 320.

A state agency doctor, Dr. Dyde, also opined as to Mr. Estrada's mental impairments based on the administrative record. R. 201-218. Dr. Dyde determined that Mr. Estrada had moderate difficulties in social functioning and mild difficulties in activities of daily living and maintaining concentration, persistence or pace. R. 211. Dr. Dyde opined that Mr. Estrada is only moderately credible because he gave inconsistent accounts of his ability to go out on his own and what his principle problems are. Dr. Dyde concluded that Mr. Estrada appeared to be capable of holding a job with limited social interaction. R. 212.

<u>ALJ's Opinion</u>

Using the five-step analysis required by the social security regulations, ALJ Boyens determined that Mr. Estrada was not disabled. At step one, ALJ Boyens found that Mr. Estrada had not engaged in substantial gainful activity since the date of the alleged onset of disability. At step two the ALJ found that Mr. Estrada suffered from five severe impairments: generalized anxiety disorder, major depressive disorder, personality disorder, panic disorder, and schizoaffective disorder with psychotic features. At step three, the ALJ determined that Mr. Estrada did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

Before going on to step four, the ALJ was required to determine Mr. Estrada's residual functional capacity (RFC). The ALJ concluded that Mr. Estrada has the RFC to perform medium work as defined in 20 CFR 416.967(c), except that he should never climb ladders, ropes or scaffolds and should avoid concentrated exposure to extreme heat and cold. R. 24. The ALJ determined that mentally, Mr. Estrada retains the ability to do work requiring at least three months to learn; that he should not work closely with the general public; and that he requires limited contact with supervisors and co-workers. *Id.* In determining the RFC the ALJ included a summary of the treatment notes from Mr. Estrada's doctors at Community Reach Center. The ALJ also found some of Dr. Leidal's opinions persuasive and assigned them great weight. R. 28. However, the ALJ also determined that some of Dr. Leidal's opinions were not supported by the record and accordingly did not assign them any weight. *Id.* The ALJ also assigned substantial weight to the opinion of the state agency medical consultant. *Id.*

Using this RFC the ALJ determined that Mr. Estrada could perform his past relevant work as an apartment maintenance worker. R. 29. Because Mr. Estrada could perform past relevant work, the ALJ determined that he was not disabled. R. 30.

**Standard of Review**

This appeal is based upon the administrative record and briefs submitted by the parties. In reviewing a final decision by the Commissioner, the role of the District Court is to examine the record and determine whether it "contains substantial evidence to support the [Commissioner's] decision and whether the [Commissioner] applied the correct legal standards." *Rickets v. Apfel*, 16 F.Supp.2d 1280, 1287 (D. Colo. 1998). A decision cannot be based on substantial evidence if "it is overwhelmed by other evidence in the record. . . ." *Bernal v. Bowen*, 851 F.2d 297, 299 (10th Cir. 1988). Substantial evidence requires "more than a scintilla,

but less than a preponderance." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2007). Evidence is not substantial if it "constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).

**Conclusions**

Mr. Estrada appeals the ALJ's finding of no disability on six grounds: (1) the ALJ performed an error of law, and the decision is not supported by substantial evidence; (2) the ALJ erred by only giving part of Dr. Leidal's opinion great weight; (3) the ALJ did not give proper weight to Mr. Estrada's treating physicians; (4) the ALJ did not give reasons for finding the claimant not credible; (5) the ALJ did not properly consider the mental demands of Mr. Estrada's past work as a maintenance worker; and (6) the ALJ failed to provide a function-by-function assessment when developing the RFC.

<u>Error of Law and No Substantial Evidence</u>

In his argument, Mr. Estrada offers no support for his argument that the ALJ made an error of law or that the ALJ's opinion is not supported by substantial evidence. Without specific support for this allegation, it is no more than a recitation of the standard of review and a summary of his other specific arguments.

<u>Dr. Leidal's Opinion</u>

Next, Mr. Estrada argues that the ALJ erred in only considering part of Dr. Leidal's opinion. The ALJ reasoned that "[a]lthough this examining physician felt the claimant had some moderate to marked limitations in various realms of functioning . . . the undersigned finds these specific opinions are not supported by examination signs and findings, or with the record as whole. Other than noted above, and based on objective findings made on examination, the

undersigned finds Dr. Leidal's evaluation and opinions persuasive and accords them great weight." R. 28.

Although "an ALJ is entitled to resolve any conflicts in the record," an ALJ "is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability." *Haga v. Astrue,* 482 F.3d 1205, 1208 (10th Cir. 2007). It is troubling that the ALJ gave "great weight" to Dr. Leidal's opinion, yet discounted all of his findings that could potentially lead to a finding of disability. Further, it is not clear what evidence the ALJ used to support this conclusion. Although there were extensive treatment notes from both of Mr. Estrada's treating physicians, neither doctor furnished an opinion of Mr. Estrada's work restrictions based upon his mental impairments. Further, the state consultative physician provided little analysis of Mr. Estrada's work restrictions. Dr. Dyde completed a check-the-box evaluation where he opined that Mr. Estrada had moderate difficulties in social functioning and mild difficulties in activities of daily living and maintaining concentration, persistence or pace. R. 211. In the narrative section, Dr. Dyde said little about Mr. Estrada's work related restrictions. Instead of a function-by-function analysis, he concluded that Mr. Estrada could hold a job with limited social interaction. R. 212.

The commissioner argues that Dr. Leidal's opinion was not uncontroverted, because both Dr. Dyde and Dr. Snodgrass opined that Mr. Estrada could work. However, those opinions do not assist in completing a function-by-function analysis of Mr. Estrada's mental abilities. Under the five step sequential analysis, an ALJ is required to determine what a claimant's functional limitations are and then compare those limitations to relevant work to determine if a person is disabled. A general statement that a doctor believes that a claimant can work does little to help in the function-by-function analysis that is required under the regulations. Dr. Leidal is the only

physician who offered a function-by-function analysis of Mr. Estrada's mental limitations. "[A]n ALJ cannot substitute [his] lay opinion for that of a medical professional." *Lax v. Astrue,* 489 F. 3d 1080, 1089 (2007).  Because Dr. Leidal's opinions about Mr. Estrada's specific functional limitations were not contradicted, the ALJ was not entitled to pick and choose within his opinion.  Accordingly, remand is appropriate to either accept Dr. Leidal's opinion in its entirety or provide support for rejecting those parts of the opinion that could lead to a finding of disability.

### Treating Source Opinions

Third, Mr. Estrada argues that the ALJ erred in not assigning the proper weight to his treating physicians' opinions.  Treating physicians' opinions are generally given controlling weight.  *Watkins v. Barnhart,* 350 F.3d 1297, 1300 (10th Cir. 2003).  "The treating physician's opinion is given particular weight because of his unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." *Doyal v. Barnhart*, 331 F.3d 758, 762 (10th Cir. 2003).  However, in this case, neither of Mr. Estrada's treating physicians provided an opinion as to Mr. Estrada's work restrictions.  Because the record did not provide an opinion, it would be unreasonable to require the ALJ to assign them great weight.  In his opinion the ALJ did discuss at length the treating physicians' treatment notes.  This shows that the ALJ did not ignore the opinions and observations of Mr. Estrada's treating physicians, but rather Mr. Estrada did not provide adequate information from these doctors so that they could be accorded controlling weight.

The ALJ's Credibility Determination

Mr. Estrada argues that the ALJ erred in not providing reasons that Mr. Estrada was not credible. "Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir.1995) (internal citations and quotations omitted). However, "[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Huston v. Bowen*, 838 F.2d 1125, 1133 (10th Cir.1988) (footnote omitted).

The ALJ stated he found Mr. Estrada not credible to the extent that his testimony conflicted with the ALJs determination of the RFC. Although statements like this are commonly used in social security benefit decisions, this statement is not sufficient to support a finding that a claimant is not credible, because it does not "explain and support with substantial evidence which of [his] testimony he did not believe and why." *McGoffin v. Barnhart*, 288 F.3d 1248, 1254 (10th Cir. 2002).

However, in his decision, ALJ Boyens went beyond this boilerplate statement and explained his reasoning for finding Mr. Estrada to be less than credible. The ALJ pointed out that Mr. Estrada said that he was walking a lot, and this contradicted reports that he had crippling agoraphobia. R. 27. The ALJ also noted that despite Mr. Estrada's reports of agoraphobia and depression, he also reported that he enjoyed staying busy and social by helping people move. R. 27. Because the ALJ was able to point to specific evidence to support his determination of Mr. Estrada's lack of credibility, he did not err.

Mental Demands of Past Relevant Work

Mr. Estrada also argues that that ALJ failed to properly consider the mental demands of his past relevant work as an apartment maintenance worker. At step four of the five-step sequential process, the ALJ must determine if the claimant is able to perform past relevant work. To do this, a three phase analysis is necessary. *Zaricor-Ritchie v. Astrue,* 452 Fed. App'x 817, 825 (10th Cir. 2011). First, the ALJ must determine the claimant's RFC; second, the ALJ must "make findings regarding the physical and mental demands of the claimant's past relevant work;" and third the ALJ must make findings about the claimant's "ability to meet the mental demands of [his] past relevant work despite [his] mental impairments." *Id.* Mr. Estrada argues that the ALJ failed to properly assess the mental demands of his past relevant work.

In determining the mental demands, the "ALJ must obtain adequate factual information about those work demands which have bearing on the medically established limitations." *Id.* (quoting SSR 82-62, 1982 WL 31386, at *3 (1982)). An ALJ can rely on a vocational expert's testimony in making the determination whether the claimant can perform past relevant work, but the "ALJ himself must make the required findings on the record, including his own evaluation of the claimant's ability to perform his past relevant work." *Id.* (quoting *Winfrey v. Chater,* 92 F.3d 1017, 1025 (10th Cir. 1996)). In this case, the ALJ did not ask the vocational expert what the mental demands of an apartment maintenance worker were. Instead, the ALJ posed a hypothetical to the vocational expert asking whether someone with Mr. Estrada's RFC could complete work as an apartment maintenance worker. R. 56-57. This is not adequate, because it

did not establish for the record the mental demands of apartment maintenance worker.[1] It skipped the second phase of the determination process and went straight to the third phase. Accordingly, remand is necessary to establish the mental demands of apartment maintenance worker.

<u>Function-by-Function Analysis</u>

Finally, Mr. Estrada argues that the ALJ failed to provide a function-by-function analysis as is required by Social Security Ruling 96-8. The RFC contained specific functional limitations: that the claimant should not work closely with the general public and that he requires limited contact with supervisors and co-workers. Accordingly, the ALJ's opinion provided the analysis that is required under SSR 96-8.

**Order**

The decision of the ALJ is reversed. The case is remanded to the Commissioner for proceedings consistent with this order, namely that he reevaluate the weight given to Dr. Leidal's opinion and develop the record relating to the mental demands of Mr. Estrada's past relevant work.

DATED this 26th day of March, 2013.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge

---

[1] I also question whether apartment maintenance worker is the correct classification. During the hearing, Mr. Estrada testified that at the job that was classified as apartment maintenance worker, he did no maintenance, only cleaning. R. 44.